308 Ga. 70
FINAL COPY

S20A0306.  RICHARDSON v. THE STATE.

B<span>LACKWELL</span>, Justice.

Sylvester Richardson was tried by a DeKalb County jury and convicted of murder and other crimes in connection with the fatal shooting of Christopher Wilson. Richardson appeals, claiming that the trial court erred when it denied a motion for a mistrial and when it admitted evidence that he was involved in a gang. Richardson also contends that he received ineffective assistance of counsel. Upon our review of the record and briefs, we see no error and affirm.[1]

---

[1] Wilson was killed in January 2017. A DeKalb County grand jury indicted Richardson in May 2017, charging him with murder with malice aforethought, two counts of murder in the commission of a felony (predicated on armed robbery and aggravated assault), armed robbery, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Richardson was tried in February 2018, and the jury found him guilty on all counts. The trial court initially sentenced Richardson to imprisonment for life for malice murder, a consecutive term of imprisonment for life for armed robbery, and a consecutive term of imprisonment for five years for the unlawful possession of a firearm during the commission of a felony. The felony murders were vacated by operation of law, and the aggravated assault merged with the malice murder. Richardson timely filed a motion for new trial, which he amended in April 2019. The trial court vacated Richardson's conviction for

1. Viewed in the light most favorable to the verdict, the record shows that on January 20, 2017, Wilson and Jarvis Miller offered to buy a handgun that was posted for sale on an Instagram account for "Slime Shank." That account was Richardson's, and he agreed to meet with Wilson and Miller that afternoon. Richardson initially suggested his apartment complex as a meeting place, but the men later agreed to meet outside a nearby high school. Richardson needed a ride to the meeting, and he told his friend Danny Vu that he intended to commit a robbery there. When Vu refused to involve his mother's car in a crime, Richardson arranged for Cameron Webb to drive him (and Vu) to the school.

Richardson, Webb, and Vu arrived at the meeting place first, and Wilson and Miller arrived shortly thereafter. Wilson got into the back seat of Webb's car and gave Richardson $300 for the handgun.

armed robbery, finding that it was not supported by sufficient evidence, but it otherwise denied Richardson's motion for new trial in May 2019. The trial court granted Richardson's motion for leave to file an out-of-time appeal in July 2019, and Richardson then timely filed a notice of appeal to the Court of Appeals. That court transferred this case in September 2019, and it was docketed in this Court for the term beginning in December 2019 and submitted for decision on the briefs.

But Richardson did not hand over the gun. Instead, he told Wilson that he had forgotten to bring the extra clip for it and that they all needed to go get it. Webb drove off — with Wilson still in the back seat—and although Miller attempted to follow them, he ultimately lost sight of Webb's car. Richardson directed Webb to stop the car at the end of a cul-de-sac (located in DeKalb County), the men all got out of the car, and Richardson fatally shot Wilson with his nine-millimeter handgun.

Richardson does not dispute that the evidence is legally sufficient to sustain his convictions for murder and the unlawful possession of a firearm during the commission of a felony.[2] But consistent with our usual practice in murder cases, we nevertheless have reviewed the evidence and considered its sufficiency. Viewed in the light most favorable to the verdict, we conclude that the evidence adduced at trial is sufficient to authorize a rational trier of

---

[2] Richardson does claim that the evidence is insufficient to support a conviction for armed robbery, but this claim is moot because the trial court has already vacated Richardson's conviction for armed robbery. See Wallace v. State, 294 Ga. 257, 258-259 (2) (754 SE2d 5) (2013).

fact to find Richardson guilty of the crimes of which he has been convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. At Richardson's trial, a police officer made a passing reference in his testimony to Richardson having been incarcerated.[3] Richardson moved for a mistrial, which the trial court denied. Richardson now claims that the trial court should have granted a mistrial because the police officer's statement was an improper comment on Richardson's character.[4] But "a passing reference to [a] defendant's incarceration does not place his character in evidence."

---

[3] The police officer was asked about his discovery of a Twitter profile for "Slime Shank," and the officer said that he identified the owner of the profile as Richardson based on a posting that said "Slime Shank was spending his 18th birthday incarcerated."

[4] At the hearing on Richardson's motion for new trial, Richardson's trial lawyer testified that she did not request a curative instruction following the police officer's statement (although she believed that the trial court would have provided one) because she decided that such an instruction would only magnify any prejudice resulting from the statement. Richardson does not allege that his lawyer's failure to request a curative instruction constitutes ineffective assistance. But see Babbage v. State, 296 Ga. 364, 370 (5) (d) (768 SE2d 461) (2015) ("Counsel's decision not to draw attention to [passing reference to the defendant's criminal record] by making an objection neither constitutes deficient performance nor, given the weight of the evidence against [the defendant], resulted in any prejudice.").

4

Jordan v. State, 303 Ga. 709, 714 (4) (814 SE2d 682) (2018) (citation and punctuation omitted). The trial court did not abuse its discretion when it denied the motion for a mistrial. See Lee v. State, 306 Ga. 663, 669 (4) (832 SE2d 851) (2019) ("Whether to grant a mistrial is committed to the discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal unless there is a showing that a mistrial was essential to preserve the defendant's right to a fair trial.").

3. Richardson contends that the trial court erred when it allowed a gang expert to testify that a letter sent by Richardson to Vu after their arrest (and that Vu considered to be threatening) contained numerous gang references. According to Richardson, the gang testimony was not relevant under OCGA § 24-4-401, and any probative value of the testimony was substantially outweighed by the danger of unfair prejudice under OCGA § 24-4-403 because Richardson was not indicted for criminal gang activity and the expert's testimony improperly suggested that the killing of Wilson was gang-related.

It is well established, however, that there is "no requirement . . . for a defendant to be charged with criminal street gang activity before otherwise relevant evidence of gang activity may be admitted." Taylor v. State, 304 Ga. 41, 46 (3) (816 SE2d 17) (2018). The letter was largely incomprehensible to someone unfamiliar with the vernacular of Richardson's gang,[5] and the expert testimony was relevant (and had significant probative value) because it showed that the letter instructed Vu to keep quiet about Wilson's murder. And it was important to show that the letter was designed to keep Vu quiet because Richardson's attempt to conceal his involvement in the crimes was evidence of his guilt. See State v. Orr, 305 Ga. 729, 741 (4) (827 SE2d 892) (2019) ("it is today universally conceded that

---

[5] For example, the opening of Richardson's letter to Vu says, "Y⊗⊗ xhino wtf Blazin twin," and the closing is "PETE$AP! STAYDOWN." The expert explained the meaning of these statements — and the remainder of the letter — through his testimony that members of Richardson's (and Vu's) gang did not write the letter "c," but instead replaced "c"s with "x"s or "k"s (or in one instance, a "B") and that they occasionally replaced the letter "o" with the symbol "⊗⊗" and the letter "S" with the number "5." In addition to explaining the meaning of words and phrases like "Blazin" and "PETE$AP! STAYDOWN," the expert explained the meaning of other words and phrases in the letter that were part of "gang vernacular," including "No faxe No kase," "E5iDExILMB," and "B$AP."

6

the fact of an accused's . . . concealment . . . and related conduct, is admissible as evidence of consciousness of guilt, and thus of guilt itself") (citation and punctuation omitted). Finally, given that other evidence showed that Richardson (and Vu) were members of a gang, the admission of evidence that Richardson used gang vernacular in his letter to Vu was not significantly prejudicial. As a result, the trial court did not abuse its discretion when it rejected Richardson's claim that the probative value of the gang expert's testimony was substantially outweighed by the danger of unfair prejudice. See Jordan v. State, 307 Ga. 450 (2) (836 SE2d 86) (2019).

4. Finally, Richardson claims that he was denied the effective assistance of counsel during his trial. To prevail on a claim of ineffective assistance, Richardson must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Richardson must show that his lawyer performed her duties at trial in an objectively

unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U.S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Richardson must show "a reasonable probability that, but for his lawyer's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694 (III) (B). This burden is a heavy one, see Kimmelman, 477 U.S. at 382 (II) (C), and Richardson has failed to carry it.

According to Richardson, his trial lawyer should have moved for a mistrial when the prosecutor said in his opening statement that Richardson had been "locked up in metro YDC" at some point in 2015.[6] But the lawyer did request a curative instruction, the trial court told the jury to disregard the prosecutor's comment, and the

---

[6] To the extent that his lawyer did, in fact, move for a mistrial, Richardson argues that his lawyer was ineffective in failing to ensure that the motion was placed on the record.

prosecutor apologized for making it.

At the hearing on Richardson's motion for new trial, his trial lawyer asserted that she did, in fact, move for a mistrial at a bench conference after the prosecutor made the statement at issue, but it is undisputed that she failed to place her motion for a mistrial on the record. In any event, the trial court found in its order denying the motion for new trial that it would have exercised its discretion to deny the motion for a mistrial and to provide the curative instruction even if Richardson had, in fact, moved for a mistrial. Such an exercise of discretion would not have been in error in this case. See Dublin v. State, 302 Ga. 60, 67 (4) (805 SE2d 27) (2017). As a result, Richardson has not shown that he was prejudiced as a result of any failure by his trial lawyer to move for a mistrial (or, alternatively, to place such a motion on the record). See Lupoe v. State, 300 Ga. 233, 249 (15) (794 SE2d 67) (2016) ("trial counsel was not ineffective in failing to move for a mistrial because the trial court, under the circumstances, would have been well within its discretion to deny a mistrial") (citation and punctuation omitted).

9

Judgment affirmed. All the Justices concur.

DECIDED FEBRUARY 10, 2020.
Murder. DeKalb Superior Court. Before Judge Adams.
*Brown & Gill, Angela B. Dillon*, for appellant.
*Sherry Boston, District Attorney, Emily K. Richardson, Deborah D. Wellborn, Joshua M. Geller, Clark E. Candler II, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K.*

*Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General,* for appellee.